**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-02888-CMA-MJW

AURORA BANK FSB, a Federal Savings Bank,

    Plaintiff,

v.

HOME LOAN CENTER, INC., a California corporation d/b/a LENDINGTREE LOANS,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART AS MOOT
DEFENDANT'S MOTION TO TRANSFER AND TO STAY THE CASE**

---

    This matter is before the Court on Defendant Home Loan Center, Inc.'s ("HLC") Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) and Motion to Stay Pending Resolution of Motion to Transfer. (Doc. # 25.) Defendant requests that this case be transferred to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, Defendant's motion to transfer is granted in part and denied in part as moot.

## I. BACKGROUND

    On April 16, 2002, and on November 5, 2004, Defendant sold a number of mortgage loans to Plaintiff Aurora Bank FSB (formerly known as Lehman Brothers Bank). (Doc. # 1-1.) The terms of each sale were set forth in loan purchase agreements (the "Agreements") that expressly incorporated additional terms contained in Plaintiff's "Seller's Guide." (*Id.*) On January 4, 2013, Plaintiff filed an Amended Complaint with the Court, alleging that Defendant breached the Agreements and the

express warranties contained therein. (Doc. # 11.) Specifically, Plaintiff alleges that Defendant breached the Agreements because HLC's underwriting was not in compliance with the guidelines set forth in the Seller's Guide and that certain borrowers made material misrepresentations of their income, employment, and/or occupancy status in order to qualify for their loans. (*Id.* at 5.)

On February 19, 2013, HLC filed the instant motion to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a). (Doc. # 25.) Plaintiff filed its response on March 12, 2013 (Doc. # 28), to which Defendant replied on March 26, 2013 (Doc. # 29).

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district where it might have been brought" for the "convenience of the parties and witnesses, in the interest of justice." The United States Supreme Court has explained that § 1404(a) gives "discretion [to] the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In the Tenth Circuit, the moving party must prove that (1) the action could have been brought in the alternate forum, (2) the current forum is inconvenient, and (3) the interests of justice are better served in the alternate forum. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (citing 28 U.S.C. § 1404(a) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)).

In assessing whether parties are inconvenienced and whether the interests of justice would be best served by a transfer, the Court balances the criteria outlined in *Chrysler Credit.* These criteria include, but are not limited to:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).  The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quotation marks and citation omitted).  Only if the factors weigh strongly in favor of the moving party will the Court transfer the case.  See *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005).  "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."  *Id.* at 966.

### III.  ANALYSIS

As an initial matter, the Court notes that it agrees with Defendant's assertion that Plaintiff could have brought this case in the Central District of California.  Federal district courts have original jurisdiction over civil actions where (1) the amount in controversy

exceeds $75,000 and (2) the dispute is "between citizens of different States." 28 U.S.C. § 1332(a). In its complaint, Plaintiff asserts that the amount in controversy exceeds $75,000, satisfying the first prong of § 1332(a). (Doc. # 11 at 2.) The second prong is satisfied because complete diversity of citizenship exists between the parties – Plaintiff's home office and primary place of business is Colorado, while Defendant's place of incorporation and principle place of business is California. (*Id.*) Additionally, venue is proper in the Central District of California because HLC, the sole Defendant in this matter, is a California corporation, and a substantial portion of the events giving rise to the claims asserted took place in the Central District of California. *See* 28 U.S.C. § 1391(b)(1)-(2). As such, the Court begins its analysis by evaluating the factors outlined in *Chrysler Credit* to determine whether Defendant has shown that the District of Colorado is inconvenient and that the interests of justice are better served by transferring this case to the Central District of California.

A. **PLAINTIFF'S CHOICE OF FORUM**

Among the factors to consider, substantial weight is usually given to a plaintiff's choice of forum. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010); *Gerhard Interiors, Ltd.*, 399 F. Supp. 2d at 1166 (citing *Knapp v. Romer*, 909 F. Supp. 810, 813 (D. Colo. 1995)). However, courts "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Bartile Roofs, Inc.*,

618 F.3d at 1168 (10th Cir. 2010) (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

In the instant case, as Defendant argues, the facts giving rise to Plaintiff's claims have no material relation or significant connection to Colorado. Defendant asserts that Plaintiff's claims for breach of contract and breach of express warranty arose from Defendant's allegedly noncompliant underwriting and not from the subsequent loan servicing. Defendant attests that the underwriting of the loans at issue took place at its offices in Irvine, California, and that none of the residences that correspond with the loans at issue are located in Colorado.[1]  (Doc. ## 27, 30.)  Additionally, while Plaintiff, a federal savings bank with its home office in Colorado, initiated this action, the Agreements at issue were executed between HLC, a California corporation, and Lehman Brothers Bank, a Delaware corporation. As such, the Court agrees with Defendant that it did not have any reason to suspect that it would face litigation arising from the Agreements in Colorado. Therefore, because the facts giving rise to the claims alleged in this case have no significant relation to Colorado, and instead have a close connection to California, this factor does not weigh in favor of retaining the case here, as it normally would but, rather, indicates that the Central District of California would be a more appropriate forum.

---

[1] The properties securing the loans at issue are located in Florida, Georgia, Tennessee and Pennsylvania.  (Doc. # 27.)

### B.   ACCESSIBILITY OF WITNESSES AND SOURCES OF PROOF

Further, while both parties assert that they will be calling numerous witnesses to testify in this matter, a significant number of non-party witnesses are located in California and cannot be compelled by the Court to appear here. These witnesses include eight of HLC's former employees who were responsible for underwriting the loans at issue in this case and who will likely be material witnesses. (Doc. # 30.) The remainder of the identified witnesses who are located outside of California are Plaintiff's current employees and, thus, have other incentives to appear at trial such that the lack of compulsory process for them does not weigh heavily in favor of retaining the case here. *See Galvin v. McCarthy*, 545 F. Supp. 2d. 1176, 1182-83 (D. Colo. 2008) (finding that witnesses who were employed by the defendant had incentives to appear at trial, even where the venue was inconvenient); *see also McMechen v. United States*, No. 06-cv-02209, 2007 WL 433123, at *3 (D. Colo. 2007) (unpublished) (transferring venue where all pertinent witnesses other than the plaintiff were located out of state); *Shesol v. I.V. House, Inc.*, No. 06-cv-02551, 2008 WL 410587, at *3 (D. Colo. 2008) (unpublished) (transferring the case because, among other reasons, the majority of relevant witnesses were located in the transferee district). Thus, this factor weighs in favor of transferring the case to California.

### C.   COST OF MAKING NECESSARY PROOF

Additionally, HLC argues that litigating in California would be more economical because of the number of non-party witnesses located within the state, as well as

current employees and key documents that are located at HLC's headquarters in California.  On the other hand, Plaintiff argues that "virtually all of the information that HLC itself identified as being relevant is maintained here in Colorado" and that "the cost of bringing the original documents and every necessary Aurora . . . employee from Colorado to California" would be prohibitive.  (Doc. # 28 at 9-10.)  However, in the modern era, with electronic discovery procedures, the cost of reproducing and shipping documents to the trial venue can usually be accomplished at a relatively minor cost. *See Klein*, 956 F.2d at 966.  Further, the Court is not convinced by Plaintiff's bald assertion that sending necessary employees to testify at trial would be cost prohibitive.  Therefore, because either venue will impose some inconvenience and costs to the parties, the Court does not find this factor to be very significant in this case.

**D.     REMAINING FACTORS**

The remaining *Chrysler Credit* factors are irrelevant here.  The differences between the District of Colorado's docket size and speed to trial and the Central District of California's docket are negligible.  No risk of questions arising in the area of conflict of laws exists since the Agreements dictate that New York law governs this case.  Likewise, there is no question of an advantage of having a local court determine questions of local law since neither this Court nor Defendant's proposed venue is located in New York.

Accordingly, after balancing the relevant factors – and, especially, taking into consideration that (1) the material facts giving rise to this action arose in California and

(2) a significant number of material non-party witnesses are located in California – the Court determines that the convenience of the parties and witnesses, as well as the interests of justice, weigh strongly in favor of transferring this case to the Central District of California.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Transfer or Stay this action (Doc. # 25) is GRANTED IN PART to the extent it seeks a transfer to the Central District of California and DENIED IN PART AS MOOT to the extent it seeks a stay. As such, it is

FURTHER ORDERED that this case be TRANSFERRED to the Central District of California.

DATED: May __14__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge